We will start with United States v. Kevin Ventura. Morning. Morning. You may proceed. How are you? My name is John Maringolo and I represent Mr. Ventura. I would like to thank the court for allowing Mr. Ventura to submit his pro se briefs. He wanted me to tell the court that he's thankful and hopes that the court will Thank you. So first I would like to start with issue number one, that count one should be vacated because arson is not a crime of violence. We're holding that issue, aren't we, for the Supreme Court's decision in DiMaia? Yes, Your Honors. You can argue, but we probably will not decide it pending that decision. Okay, so then I'll move on to issue number two, if that's okay? Good thinking. Okay. So Mr. Ventura respectfully requests that the court vacate count one, four, and five based on the violation of 924C, the ex post facto clauses. Mr. Ventura was convicted on those counts based on that the firearm that he was using or was being used was an in furtherance of the crime. But the crime in 1998 was amended to have that exact language in it, in possession, in furtherance. Respectfully, these crimes that he was convicted were in 1994 and 1995. But counsel requested that charge. I mean, not only didn't object to it, but requested it. Is that right? That is correct. Trial counsel did request that charge. So it's forfeited, isn't it? Excuse me, Your Honor? Forfeited. Well, because I don't want to prejudice Mr. Ventura, if the court would consider because the counsel was unaware at the time of these particular ex post facto issues . . . I understand the dilemma you have, but what . . . I mean, you're starting off with plain error and going downhill from there. Turn to the Apprendia Lane issue. That interests me very much. Which is count 5, Your Honor, .5 with the . . . I think it's count 4 and 5. 4 and 5. Or 2 and 3, I'm sorry. Count 2 and 3. That is the murder for hire counts, correct? Those were the only counts that required the mandatory life sentence. That is correct, Your Honor. Respectfully, the district court erred by giving a wrong jury instruction. In order for the defendant to have been convicted for the life count, the judge should have decided to hold that the firearm and the murder was if death results. They left out if death results in the jury charge. That is correct, but then the judge said in his sentencing colloquy that he can draw that inference because of the convictions on the gun counts. Tell me why he was wrong. He was wrong because the gun counts could be separate and distinct from the murder for hire counts. He had committed the gun counts without death resulting? He could have. I mean, does the statutory language and the charge to the jury allow them to convict on the gun counts without death resulting? Yes, Your Honors. Where does the death result . . . On what basis does he find it in the jury verdict to impose life . . . I believe that the judge took a leap from the 924J counts that the jury convicted Mr. Ventura on. Primarily, we don't encourage judges to leap without looking first. Do you think it was a legitimate leap? Because the if death results language is an element of the offense, I don't believe that we had a special verdict, so I think that the judge did make that leap, Your Honor, and it's significant. Is it an element of the offense, death resulting? If death results is an element of the offense, yes. The jury wasn't charged that they had to find that? That is correct. Why isn't it outright on its face a violation of Apprendi and Allain? If the judge sees it that way, we would concur. You argue that it is. Yes. It's not high up on your list of arguments that you make, but you argue persuasively that it's error and that it's not harmless error. That is correct, Your Honor. Tell me why it's not harmless. Because it's a mandatory life count if death results. In this case, the judge by sentencing him to the multiple life counts, by using the other counts that he was convicted on to get there, without a special verdict form, I believe that that's error. This judge, who we know is a very fine judge, said that he didn't have a choice. He might have had a choice if it wasn't life mandated, so we know it's not harmless, correct? The judge said . . . Well, it's certainly not harmless, no. The judge said, I didn't have a choice in this, so I'm doing it. But if he had a choice, he might have done something else. Is that correct? That is correct, yes. What would be the mandatory minimum if death didn't result? Ten years on each count. All right. Continue with your argument. If the court . . . I would take . . . Would you want me to argue any other issues? I would take number five. Issue number five is to remand the resentencing that the court erred, concluding that 18 U.S.C. 924J incorporates the mandatory minimum sentences of 924C. I know the court in 2014, in Young, held that it can, and other circuit courts also did. However, the Eleventh Circuit states that for any term of years or life, so because we hold that there is a mandatory minimum on a 924C and say that the 924J would have a mandatory minimum, it goes against what Congress intended where they say for any terms or for life, for any term of years. So any term of years would not be a mandatory minimum. So I would respectfully request that the court reconsider that issue. Are you still pursuing the Rosemond issue? Yes, Your Honor. Is that on plain error, or was there an objection? That is on plain error. Because that was not necessarily preserved. No, it wasn't by the trial. Was the Apprendi issue objected to? I don't believe so. That's plain error. No, it was. I think it was objected to. In the sentencing. Yes, in the sentencing, not during the trial. Correct. Who was the charge objected to? The charge was not objected to. Well, you take the record as you find it, counsel. Yes. All right. Thank you much. We'll hear from the government. May it please the court. My name is Micah Smith, and I represent the United States in this appeal. Good morning, counsel. Good morning. You've heard of my interest in this Apprendi issue? Yes. In your brief, in response, you cite the United States versus Hiles from the Eighth Circuit. Yes. No special interrogatory was given there either. In that case, the judge charged death resultant. It doesn't really prove your point, does it? The argument that we make in reliance on Hiles is that the reasoning of the Eighth Circuit decision supports the reasoning that we're advancing here. The reasoning is this. What the jury was instructed with respect to the 924J counts was, among other things, that the defendant's conduct had to, quote, cause the death of a person, and that's what made it a 924J count as opposed to just a straightforward 924C. It doesn't have to be achieved. It's the intent to cause the deaths, but death doesn't have to result on the 924J. That's the difference. That is not correct, Your Honor. For a 924J count, death has to be caused. In other words, what 924J requires is that the government prove beyond a reasonable doubt that in the course of committing a violation of 924C, the defendant's conduct causes the death of a person. That is why a violation of 924J exposes a defendant, among other things, to the death penalty, which would not be the case if it were simply about the defendant's intent, if it were possible for a 924J violation. It's not a mandatory minimum, however, right, as 1985 is? That is correct, Your Honor. The murder-for-hire counts, when death results, require a mandatory life sentence. When death does not result, as Mr. Maringolo pointed out, the statutory maximum is 10 years. We know this judge was concerned about life. He said, I don't have a choice because of this, and yet there wasn't the jury found that death resulted from the murder-for-hire conspiracy. What we would argue is that the complete set of jury findings establish that death resulted from Ventura's conduct. Specifically, you're reverting to the guilty verdict on the 924J count. That's correct, Your Honor, which is to say what the jury had to find to the deaths of Garrido and Penzo was that Ventura's conduct caused, or it had been the causing of the death of both of those individuals. The jury did a couple of things. First, the jury found . . . It's the government's position that the conviction on that count, those counts, establish death resulting. That's correct, Your Honor. Death resulting as to those two victims. What the jury's verdict as to the murder-for-hire and murder-for-hire conspiracy counts established is that Mr. Ventura was guilty of arranging for the hit men to go out and engage in the conduct that then, as the jury found with respect to the 924J counts, caused those victims' deaths. As laid out in the jury's findings, it was established beyond any doubt that the conduct that Mr. Ventura engaged in, arranging for hit men to go to 34 Begardus Place and shoot and kill Eugene Garrido, that that conduct, as the jury's verdict in the 924C counts established, caused the death of the two individuals, Penzo and Garrido. . . . do not have the minimum life sentence attached to them. Isn't that correct? That is true, Your Honor. In order to impose the minimum life sentence, which the judge did unhappily, as I read the sentencing transcript, he had to take the finding from one count and apply it to another count. Do we ordinarily do that? I think you do, Your Honor. I can't find a case that says that this is an approved procedure. You don't cite any in your brief. I spent days looking for a case that says you can use a finding from one count and apply it to another count that has a mandatory minimum. The case that you cite, Hiles, does not stand for that proposition. In that case, in any event, they were instructed that death had a result, even though they didn't get a special verdict. Unlike in this case, where they were not instructed that death had a result. Your Honor, I would suggest separating two different issues. One issue is the jury being instructed, or not being instructed as they weren't instructed in this case, as to an element, or what we would say is an element of an offense. Then the second question is, what are the sentences or what are the sentencing consequences that would flow from a conviction as to a particular offense? Our first point is that it is true that Judge Kodal did not instruct the jury as to an element of the count. The death has to result. The death had to result. That's what triggers the minimum life sentence. That's correct, Your Honor. That's what makes the murder for hire conspiracy and substantive counts, counts that produce either the death penalty or, in this case, mandatory life sentences. Now, the counts did charge death resulting. What we suggest in our briefing is that the other charges, the 924J charges, did instruct the jury that they had to find the death resulting. What we're talking about here is setting aside the sentencing consequences of having been convicted of a murder for hire count with the element of death resulting. It's all plain error. It's plain error in the sense that, yes, Your Honor, that would be our position. It's plain error because there was no objection to the instructions at any point leading . . . We asked for briefing on whether there should have been a special verdict. No special verdict was requested by either the government. The government never wants a special verdict, right? They never ask for it if they can avoid it. No. The way, at least I would understand it, is that, as a general matter, all parties endeavor to respect the secrecy of jury deliberations, and a special verdict is an exception to that rule. It is, to some extent, an intrusion into the jury's deliberations. We find ourselves now where we're not certain that they found a particular element, and this element is very important because that's the one that brings life imprisonment. It is an important element, Your Honor. We would disagree that there's any uncertainty. Life imprisonment is not mandated for the other counts in which they found that death resulted from the use of the gun. Life imprisonment is not mandated from those, is it? It is not, but death resulting is a required element for 924J. The jury found that under the Supreme Court's decision in Nader, when, and I'll quote, an omitted element is uncontested and supported by overwhelming evidence, an erroneous instruction or failure, and that case was a materiality instruction. Here, the element is death resulting. The evidence that Eugene Garrido and Carlos Penzo were killed as a result of Mr. Ventura's conduct was overwhelming, and it's inarguable, and the jury found it in the 924J counts. Correct. I don't dispute that. I read the record pretty closely, but they did not find that death resulted from the conspiracy or the aiding and abetting on the murder for higher charge. The judge was troubled enough about it that he said in the sentencing colloquy, should I have had a special verdict? He asked briefing on that subject, and we wind up doing what you say is a standard operating procedure to take information from one count and you apply it to a sentencing in another count. Is that typically done? Yes, Your Honor, I would take . . . How do you find a case that says that that's how we work? I think Nader takes it even further. What the Supreme Court in Nader said was even if there isn't a jury verdict as to that particular element, if the evidence as to that omitted element in a jury instruction is uncontested and supported by overwhelming evidence, it is appropriate for the court to treat that as harmless error. Here, it's not just, although it is, that the evidence was overwhelming and uncontested that the conduct of Jose and Jorge LaFontaine resulted in the deaths of Eugene Garrido and Carlos Penzo, but the jury in fact found that in convicting Ventura as to the 924J counts related to those individuals' deaths. The jury then also found that Mr. Ventura was guilty of hiring those hitmen who the jury separately found had committed, who had caused those victims' deaths. And so this is an extraordinarily strong case establishing that although there was an omitted instruction, and there certainly was an omitted element in the instruction as to the murder for hire counts, the evidence of death resulting was, to use Nader's language, uncontested and supported by overwhelming evidence. We concede that it was error but harmless error. Is that your position? That is the government's position, yes, Your Honor. It was error not to charge the jury that death had a result from the murder specifically. Yes. That it was okay and typical to take information from the conviction on the gun counts and apply them to the murder for hire counts. I wouldn't describe it as typical. We hope that . . . I couldn't find a case that says that that's the way judges can or should sentence. Do you know such a case, counsel? Again, I would say that Nader . . . It's different. This is different. This is sort of from one case, from one count to another count. I think what Nader would establish for purposes of this case is that if there were no 924J counts, the court could still find the failure to instruct on death resulting harmless error because the evidence, again, was uncontested and overwhelming. You've taken all your time. Do you want to speak on another issue? I'll give you another minute or two. Thank you, Your Honor. I just briefly want to touch on count one. This is, as Your Honor alluded to at the beginning of Mr. Maringolo's argument, that it is true. The Supreme Court heard argument in DiMaia. DiMaia, in a slightly different context, is considering whether a risk of force clause is void for vagueness. This court in Hill decided it was not, so under current law in this court the risk of force clause is constitutional, but I understand the court is waiting for the decision in DiMaia. What I would suggest, however, is that putting DiMaia to the side and assuming our arguendo that DiMaia did find the risk of force clause is constitutional, which we don't think it should, but assuming that it did, we would still argue, and I think the court could still hold, that the arson underlying, which is one of the two predicates underlying the 924J conviction for the murder of Noel Montanez, should still be affirmed here. There are a couple of very quick reasons that just flag. They're laid out in the government's briefing, but just to raise them now. One is because under the elements test, so putting aside the risk of force standard, under the elements test the government's position that arson is a crime of violence. Mr. Ventura makes the argument that an arson could be committed entirely recklessly. We disagree. We think that to set a fire or use an explosive, there has to be some intent and some intent to set that fire or to use that explosive. And what an individual can be reckless toward is the destruction or damage of property. And so once there is that intent within the use of the fire or the explosive, we're no longer in the area of Leo Cal and some of the cases that Mr. Ventura and that is why under the elements clause, putting aside the risk of force closet issue into Maya, the arson instructed in this case was properly treated as a crime of violence. And at a minimum, there's no plain error as to that. And then second, just very briefly, there also was an underlying predicate of a drug trafficking crime. And the evidence made very clear that the arson was carried out in order to advance the interests of a drug trafficking conspiracy, that all the other participants apart from Mr. Ventura were linked in some way to Mr. Ventura at trial was not in any way suggesting that he participated in this arson murder for some reason, unrelated to the drug trafficking crime. His argument at trial was that he was not involved. And so the jury found that he was involved. And the fact that the drug trafficking crime underlied the, the arson felony murder of Noel Montanez is again, another fact that cannot really be controverted. Mr. Ventura didn't try to controvert that at trial. So even if arson should not have been treated as a proper predicate, there was a second one, the drug trafficking crime, that would be an independent and sufficient basis for upholding that verdict. So for all of those reasons, and for the reasons set forth in the government's brief, unless there are any other questions that the court might have, we'd rest in our brief and ask that the court affirm the verdict. Thank you. You have three minutes for a bottle. Unless the court has any questions. I have a question. I, I, uh, we, we, we've, we've brushed on this error on this issue, but I just want to be sure it's, it's clear in my mind with respect to, um, uh, death resulting, uh, am I clear that there was no objection, uh, to that jury charge? So we review it on plain error. To the best of my knowledge at this point, there was no objection. So it's plain error. Correct. But there was at the sentencing, not during the trial. Not during the trial before the verdict, but at sentencing. There was not any objection to the charge that went to the jury. Not, no. No one requested a special verdict for him. No. And no one said in words or in substance that the charge was legally insufficient. Not in words or in substance. No one said in conformity with the federal rules of criminal procedure. Right? I don't believe that's in the record, Your Honor. Sorry? That is not in the record. I could look at it again, but I don't. The, the, the required exception, the exception required by the federal rules, uh, was not. Is that correct? That is correct. To the best of my knowledge. Thank you, counsel. Thank you both. Um, for good argument.